UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LARRY KRIEGER,

     Plaintiff,

                                   Civil Action 2:18-cv-876
                                   Chief Judge Edmund A. Sargus, Jr.
     v.                           Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Larry Krieger ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff protectively filed his application for disability insurance benefits on September 24, 2014. (R. at 355-61.) Plaintiff's application was denied initially and upon reconsideration. (R. at 218-33; 234-48.) Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on April 18, 2017, at

which Plaintiff, represented by counsel, appeared and testified.  (R. at 101-54.)  On August 2, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 82-93.)  On June 17, 2018, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision.  (R. at 2-8.)  Plaintiff timely filed this action for review.  (ECF No. 1.)

Plaintiff advances three errors in his Statement of Errors.  Specifically, Plaintiff asserts that remand is required because (1) the ALJ failed to include a restriction in the RFC for Plaintiff's use of a cane; (2) the ALJ improperly assessed whether Plaintiff meets Listing 1.02(A); and (3) the ALJ's decision is not supported by substantial evidence because she improperly weighed the state agency opinions.  The undersigned limits her discussion to evidence bearing on these contentions of error.

## II.     RELEVANT RECORD EVIDENCE

### A.     Relevant Medical Evidence

Plaintiff obtained medical treatment at various VA medical centers and from other medical providers throughout the at-issue time period.  The undersigned limits her inquiry, however, to the following records, which bear on Plaintiff's contentions of error.

#### 1.  Dr. Jason Hurst

Plaintiff underwent injections for pain in the left knee and left hip at Joint Implant Surgeons, Inc., which is where Dr. Jason Hurst practices.  On August 21, 2012, Dr. Hurst wrote Plaintiff a prescription for a handicap placard, indicating therein that "[a] condition is present in which this patient is unable to ambulate long distances."  (R. at 875.)  Dr. Hurst saw Plaintiff on September 2, 2014, for an evaluation of his left knee.  (R. at 454.)  Plaintiff reported a two-year

history of "pain and sliding" associated with that knee. (R. at 454.) Plaintiff reported that he had undergone pain injections, which he stated reduced pain for two months. Plaintiff "describe[d] occasional moderate pain globally throughout the knee." (R. at 454.) On exam, Dr. Hurst observed that Plaintiff "ascends and descends stairs but requires assistance of a handrail." (R. at 454.) He further noted that Plaintiff "requires the use of a cane to ambulate." (R. at 454.) Dr. Hurst reviewed radiological imaging of the left knee, which demonstrated mild joint space narrowing. Dr. Hess diagnosed Plaintiff with osteoarthritis and recommended a conservative approach to treatment. He indicated that "no physical therapy [was] needed" at that time. (R. at 455.) Dr. Hurst noted that Plaintiff had recently undergone pain injections and recommended that Plaintiff follow up as needed.

Plaintiff saw Dr. Hurst the following day, on September 3, 2014, for an evaluation for left hip pain. On exam, Dr. Hurst observed that Plaintiff "can ascend and descend stairs in a non-reciprocal fashion" and "sit with comfort in any chair for 1 hour." (R. at 452.) Dr. Hurst noted that Plaintiff has difficulty putting on socks and tying shoes. Dr. Hurst further noted that "[t]he patient states that one cane, for walking, is needed most of the time," and that he is able to walk only indoors. (R. at 452.) Dr. Hurst further noted a "moderate limp," though he noted no tenderness or pain with range of motion. (R. at 452.) Dr. Hurst reviewed radiographical images that revealed mild and joint space narrowing," and diagnosed Plaintiff with osteoarthritis of the left hip. (R. at 453.) Dr. Hurst recommended against surgery and advised Plaintiff to defer hip injections. He further stated, "I don't believe Mr. Krieger should be disabled due to either his hip or knee complaints." (R. at 453.)

## 2. Dr. Robert Hess

On July 28, 2016, Dr. Robert Hess examined Plaintiff at the request of Plaintiff's counsel. (R. at 844.) Plaintiff reported that he injured his left knee playing baseball while an active member of the U.S. Army in June 1990. He was provided a tentative diagnosis of a torn meniscus following the injury and ultimately underwent surgery in August 1991 after physical therapy failed to resolve the pain. Plaintiff was unable to kneel or place weight on his left knee following surgery and reported that his left leg felt unstable. Over the next decade or so, Plaintiff reportedly underwent two additional arthroscopic examinations and ultimately a total knee replacement in 2013 or 2014. (R. at 845.) Plaintiff also reported acute left ankle pain that led to arthroscopic surgery and debridement of his left ankle. In addition, Plaintiff reported undergoing hip injections in his left hip for pain and arthritic and bursitis changes.

Dr. Hess noted that Plaintiff had "a severe antalgic gait" and stated, "it is necessary for him to have a cane in his right hand to walk." (R. at 847.) Dr. Hess further observed that "[i]t is a painful gait." (*Id.*) On examination, Dr. Hess observed decreased range of motion, decreased flexion, and decreased extension throughout Plaintiff's low back, left hip, and left knee. Dr. Hess also reviewed Plaintiff's medical records. Ultimately, Dr. Hess concluded that, "[b]ased upon [his] evaluation, [Plaintiff's] whole person impairment combining the knee injury, the hip injury, the low back strain and pain, and the ankle injury, all of which are flow-through abnormalities related to his initial left knee injury, totals 52% whole person impairment." (R. at 848.) In support, Dr. Hess cited Plaintiff's "left antalgic gait which is severe," and noted Plaintiff "requires a cane and an AFO foot brace on the left." (R. at 848.)

### 3. State Agency Reviewing Physicians

On January 30, 2015, Dr. Steve E. McKee, M.D., reviewed Plaintiff's records on behalf of the state agency. Dr. McKee opined that Plaintiff can occasionally lift and/or carry up to 10 pounds and can frequently lift and/or carry less than 10 pounds; he can stand and/or walk two hours, but that a "medically required hand-held assistive device is necessary for ambulation." (R. at 228.) Dr. McKee further opined that Plaintiff can sit for a total of 6 hours in an 8-hour work day; that he is limited in his ability to push and/or pull in the left lower extremity in that he should be restricted to no foot controls with the left leg due to knee problems. (R. at 229.) Dr. McKee further opined that Plaintiff was limited to only occasionally climbing ramps and stairs and never climbing ladders, ropes or scaffolds; and occasionally balancing, stooping, kneeling, and crouching; and never crawling. (R. at 229.) Dr. McKee also determined that "[s]ince [Plaintiff] requires a cane to ambulate, [Plaintiff] is limited to no work around hazard or heights." (R. at 230.) Dr. McKee based his finding that Plaintiff needed a cane to ambulate on Dr. Hurst's September 2, 2014 evaluation. (R. at 230.) On May 14, 2015 Dr. Elaine M. Lewis, M.D., adopted Dr. McKee's opinions. (R. at 245.)

### B. The ALJ's Decision

On August 2, 2017, the ALJ issued her decision. (R. at 82-93.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

activity since February 16, 2013. (R. at 84.) The ALJ found that Plaintiff has the severe

impairments of osteoarthritis of the left knee; status-post partial left knee replacement;

osteoarthritis of the left hip with trochanteric bursitis; degenerative joint disease of the left foot

and ankle; and obesity. (*Id.*) She further found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 1.04(A). (R. at 50.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CF 404.1567(b), as the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and occasionally kneel, crouch, and crawl. The claimant could not operate any foot controls with he left lower extremity.

(R. at 87.) Relying on testimony from a vocational expert, the ALJ found that Plaintiff could

perform past relevant work as an electronics solderer and a production soldrer, and also that there

---

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

exist other jobs in significant numbers in the national economy that Plaintiff could perform.  (R. at 91-92.)  The ALJ therefore concluded that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act.  (R. at 93.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

7

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

Plaintiff contends that remand is required because (1) the ALJ failed to include a restriction in the RFC for Plaintiff's use of a cane; (2) the ALJ improperly assessed whether Plaintiff meets Listing 1.02(A); and (3) the ALJ's decision is not supported by substantial evidence because she improperly weighed the state agency opinions.  The undersigned finds these contentions of error to be without merit, for the reasons discussed below.

### A.    The ALJ Did Not Err in Concluding a Cane is not Medically Necessary

Plaintiff first contends that the ALJ erred in failing to incorporate a limitation in the RFC for his use of a cane.  If a cane is not a necessary device, it cannot be considered a restriction or limitation on a claimant's ability to work.  *Carreon v. Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002).  Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996).  "Where there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence." *Bowen v. Comm'r of Soc. Sec.,* No. 3:17-cv-17, 2018 WL 328964, at *3 (S.D. Ohio Jan 9, 2018) (internal quotation marks and citation omitted).

Here, the ALJ concluded that Plaintiff failed to establish that a cane is medically necessary.  In reaching this conclusion, the ALJ stated that there "is little evidence to support that the claimant required a use of a cane during [the relevant] time, as he even admitted that there is no prescription for it and the doctor just 'recommended' in 2011 that he use one."  (R at 90.) The ALJ further stated as follows:

> The record does include intermittent references to the claimant using a cane but nothing on a consistent basis and nothing to explain the circumstances in which he used it.  Moreover, the references were prior to the claimant's surgeries.  Therefore, the claimant did not meet his burden to establish it is medically necessary.

(R. at 90.)  The undersigned finds no error in the ALJ's analysis.  As the ALJ recognized, there is little evidence in the record that Plaintiff needs a cane.  Although Plaintiff points to the September 3, 2014 report from Dr. Hurst in which he documented Plaintiff's report that he uses a cane to ambulate (452, 454), the ALJ appropriately assessed this record and assigned it little weight.  Specifically, the ALJ stated as follows:

> Dr. Hurst indicated during the exam that the claimant mentioned using a cane most of the time but I note that there is no determination as to whether it was medically necessary.  Dr. Hurst also noted in August 2012 that the claimant could not ambulate for long distances.  I give little weight to this opinion of Dr. Hurst, as it provides no specific findings as to what would be considered long distances.  It is also possibly inconsistent with his more current opinion that the claimant would not be disabled due to his left hip or knee.

(R. at 91.)  The ALJ's assessment is supported by substantial evidence for the reasons stated by the ALJ.  Indeed, in the very same treatment note, Dr. Hurst acknowledges that Plaintiff can "ascend and descend stairs in a non-reciprocal fashion."  (R. at 452.)

Plaintiff also points to the July 28, 2016 evaluation by Dr. Hess as evidence that a cane is medically necessary; however, as the ALJ pointed out, this evaluation post-dated Plaintiff's date of last insured by nearly eight months.  Moreover, the ALJ appropriately assessed Dr, Hess'

evaluation and assigned it little weight "for the same reasons as the other VA ratings" discussed earlier in her opinion, including that the impairment ratings he used do not "equate to disability under our program." (R. at 90.) In addition, the ALJ specifically acknowledged that "Dr. Hess also indicated that the claimant would need a cane but he [did] not provide the specific reasoning as required by SSR 96-p." (R. at 91.) Further, Plaintiff has advanced no medical documentation describing the circumstances for which a cane is needed, such as all the time, for certain distances, or for certain terrains, as SSR96-9P requires. Thus, the undersigned finds no error in the ALJ's conclusion that a cane is not medically necessary. *See* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *3-4 (E.D. Mich. Sept. 25, 2017) (ALJ reasonably concluded that claimant failed to establish need for cane despite claimant's testimony that she was prescribed a cane and documentation that she received a cane where no medical source offered an opinion that she needed the cane and no medical documentation described the circumstances for which she required a cane); *Ross v. Comm'r of Soc. Sec.*, No. 2:17-cv-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (substantial evidence supported ALJ determination that claimant did not medically require assistive device as records regarding use of a cane were inconsistent, she was observed ambulating normally without a cane, and no doctor offered opinion claimant needed a cane and did not describe circumstances in which claimant needed a cane).

Plaintiff disagrees, arguing that the ALJ improperly considered the fact that no physician has prescribed a cane in determining that a cane is not medically necessary. Plaintiff correctly points out that a hand-held assistive device need not be prescribed to be found medically necessary. Nevertheless, "[t]he lack of a prescription [] is an appropriate factor to consider as to

whether substantial evidence supports the ALJ's decision that a cane was not medically necessary." *Swearengin v. Berryhill*, No. 3:17-cv-32-DCP, 2018 WL 5045216, at *4 n.4 (E.D. Tenn. Oct. 17, 2018); *see also Mitchell v. Comm'r of Soc. Sec.*, No. 13CV1969, 2014 WL 3738270, at *12-13 (N.D. Ohio Jul. 29, 2014) (specifying that plaintiff's "testimony makes clear that no doctor prescribed him a cane," while holding that "[a]s there is no medical document establishing that [plaintiff] required the use of a cane . . . the ALJ did not err by omitting the use of a cane"); *Murphy v. Comm'r of Soc. Sec.*, No. 2:11-cv-114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013) (holding there was substantial evidence to "support the ALJ's decision that the plaintiff's cane was not medically necessary," and noting that "the cane was never prescribed by any physician, treating or otherwise"). Moreover, the lack of prescription was not the only basis for the ALJ's finding that a cane is not medically necessary, as set forth above.

Finally, Plaintiff contends that the ALJ erred in concluding a cane is not medically necessary because the record demonstrates his use of a cane and severe knee pain requiring a knee brace. (SOE 6-7, ECF No. 7.) But Plaintiff fails to point to any medical documentation establishing that a cane is medically necessary or describing the circumstances for which it is needed, as SSR 96-P requires. *See* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). It is Plaintiff's burden to demonstrate through clinical evidence that a cane is medically necessary. *See Strain v. Comm'r of SSA*, No. 5:12-cv-1368, 2013 WL 3947160, *2 (N.D. Ohio Aug. 1, 2013) (the plaintiff failed to "meet her burden to demonstrate through the use of clinical evidence that a cane is necessary"); *see also* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). The undersigned finds no error in the ALJ's conclusion that Plaintiff failed to meet that burden here. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's first contention of error be

**OVERRULED**.

**B.     The ALJ Did Not Err in Concluding Plaintiff Fails to Meet Listing 1.02(A)**

Plaintiff next maintains that the ALJ erred in assessing whether Plaintiff meets Listing

1.02(A) (major dysfunction of a joint due to any cause).  To satisfy this listing, Plaintiff must

have an impairment as follows:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitations ofmotion or other abnormal motion to the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

> With:

> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b);

> OR

> B.  Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand) resulting in inability to perform fine and gross movements effectively, as defined in 1.00(B)(2)(c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  The regulations describe inability to ambulate

effectively as follows:

> Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 CFR Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b).  The regulations further provide:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective

> ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* Additionally, the evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months." 20 C.F.R. § 404.1525(c)(4). Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden of proving disability remains with the Social Security claimant at Steps 1 through 4 and does not shift to the ALJ until Step 5). A decision that a claimant meets a listed impairment "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986). In determining whether a claimant satisfies the requirements of a Listing, the ALJ must "actually evaluate the evidence, compare it to Section [1.02] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011).

Here, the ALJ determined that Plaintiff does not meet Listing 1.02 because "the claimant did not show an inability to ambulate effectively." (R. at 87.) The ALJ further stated that "the record includes some mention of the claimant using a cane prior to his surgeries but there is no prescription for it. At the hearing, the claimant indicated that the doctor had recommended in

2011 that he use the cane and he admitted that it was not prescribed." (R. at 87) (internal citations omitted). The undersigned finds no error in the ALJ's analysis.

Plaintiff contends that his use of a cane could demonstrate an inability to ambulate effectively regardless of whether the cane was prescribed. (SOE 14, ECF No. 7.) As this Court has before recognized, however, the "use of a single cane does not establish that [a] plaintiff is unable to ambulate effectively for purposes of meeting or medically equaling Listing 1.02(A)." *Rainey-Stiggers v. Comm'r of Soc. Sec.*, No. 1:13-cv-517, 2015 WL 430193, at * 5 (S.D. Ohio Feb. 2, 2015); *see also* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(B)(2)(b)(1), (2) (ineffective ambulation is found where a claimant's use of a hand-held assistive device limits the functioning of *both* upper extremities, such as requiring a walker or two canes to walk). Therefore, Plaintiff has failed to demonstrate that a cane is medically necessary in the first instance, as discussed above, but even if he had, such a showing would still fail to demonstrate an inability to ambulate effectively as contemplated in Listing 1.02.

Plaintiff also contends that because an inability to ambulate effectively was the only Listing criterion the ALJ found was missing, the ALJ was required to provide a more fulsome analysis on whether Plaintiff is able to ambulate effectively, particularly "given the well-documented difficulty that [Plaintiff] has with ambulating and left knee pain." (SOE 14, ECF No. 7.) Although the ALJ's analysis of Listing 1.02 is somewhat brief, she was clear that "the claimant did not show an inability to ambulate effectively." (R. at 87.) Moreover, even if her discussion were deficient, as Plaintiff contends, the ALJ made sufficient findings elsewhere to allow the Court to meaningfully review her decision. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his

decision to support his conclusion at step three."); *Rainey-Stiggers*, 2015 WL 430193, at *6 ("[A]lthough the ALJ's Listing 1.02 discussion is brief, the ALJ made sufficient factual findings elsewhere in her decision to . . . enable the Court to meaningfully review her decision.") Here, the ALJ concluded that a cane is not medically necessary, as set forth above. Her analysis in that regard further supports her determination that Plaintiff failed to establish an inability to ambulate effectively.

Further, despite Plaintiff's conclusory assertion that he has "well-documented difficulty" with ambulation, he fails to cite to any medical evidence that he meets this criterion of the Listing. (SOE 14, ECF No. 7.) *Thacker v. Social Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Buress v. Sec'y of H.H.S.*, 835 F.2d 139, 160 (6th Cir. 1987)). Again, Plaintiff advances evidence purportedly demonstrating a need for a cane elsewhere in his Statement of Errors; however, even if he had established that a cane was medically necessary, that would still be insufficient to demonstrate that he meets Listing 1.02. *Rainey-Stiggers*, 2015 WL 430193, at * 5.

Finally, Plaintiff contends in his Reply that the ALJ should have considered whether he equaled Listing 1.02(A). If a claimant has an impairment identified in a listing but does "not exhibit one or more of the findings specified in the particular listing," he may medically equal the listing if she has "other findings related to [the] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1); *see also Relph v. Comm'r of*

*Soc. Sec.*, 2015 WL 8767468, *22 (S.D. Ohio Dec. 15, 2015) (same). To establish medical equivalence, the "plaintiff bears the burden of presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Coe v. Comm'r of Soc. Sec.*, No. 1:15-cv-392, 2016 WL 2733479, at *20 (S.D. Ohio May 10, 2016) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). *See also* 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531; *see also* SSR 83-19, at 91-92 ("It is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence.") (emphasis in original).

Here, Plaintiff points out that the ALJ did not explicitly analyze whether Plaintiff meets Listing 1.02(A). But Plaintiff offers no evidence, other than his use of a cane, to demonstrate that he equals the Listing. This Court has held that a claimant does not meet the Listing's requirement of an inability to ambulate effectively by virtue of using a cane. *Rainey-Stiggers*, 2015 WL 430193, at *5. It follows that use of a cane is likewise insufficient to equal the Listing. Thus, particularly in the absence of any evidence by Plaintiff that he has other impairments that meet the Listing, the undersigned finds no error in the ALJ's analysis. For all of these reasons, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

**C.      The ALJ Did Not Err in Weighing the State Agency Opinions**

Finally, Plaintiff contends that the ALJ's RFC assessment is not supported by substantial

evidence because the ALJ improperly weighed the opinions of the state agency physicians. (SOE 8-10, ECF No. 7.) The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); *see also* SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). Like other medical source opinions, the ALJ must consider state agency medical opinions. *See* 20 C.F.R. § 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996) (administrative law judges are required to consider state agency medical "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and Appeals Council are not bound by findings made by State agency . . . but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the source. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (state-agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act;" thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating . . . source." (first alteration in original) (internal quotation marks omitted)); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.")

Here, Plaintiff contends that the ALJ erred in weighing the state agency opinions. Specifically, Plaintiff contends that the state agency physicians opined that Plaintiff should be limited to sedentary work because he "required the use of a cane." (SOE 10, ECF No. 7.) Plaintiff contends that the evidence supports the need for a cane and therefore the opined limitation to sedentary work, and that the "ALJ's cursory decision to the contrary should not be deemed supported by substantial evidence." (*Id.*) The undersigned disagrees.

The ALJ analyzed the state agency opinions as follows:

As for the opinion evidence, the State agency consultants found that the claimant would be limited to sedentary work with certain postural limitations and the need for a cane. I give some weight to the opinions of the State agency consultants, as they are somewhat consistent with the record. I note that there is little evidence to support that the claimant required a use of a cane during this time, as he even admitted that there is no prescription for it and the doctor just 'recommended' in 2011 that he use one. . . . The record does include intermittent reference to the claimant using a cane, but nothing on a consistent basis and nothing to explain the

circumstances in which he used it. Moreover, the references were prior to the claimant's surgeries. Therefore, the claimant did not meet his burden to establish it is medically necessary. I note that the only reason that the State agency consultants departed from the prior ALJ findings was due to the cane, which I have found not to be supported. I give weight as to the adoption of the prior postural and foot control limitations. I note that the claimant was limited to four hours of standing and walking because of increased left knee, hip, and ankle pain with such activity. The claimant [] could not operate foot controls with the left lower extremity because of increased pain with repetitive motion. The claimant then had postural limitations because of increased left lower extremity pain with certain activities, such as climbing, and diminished mobility due to his weight.

(R. at 90.) As discussed above, the ALJ did not err in finding that Plaintiff failed to establish that a cane is medically necessary. In his Reply, Plaintiff asserts that "the ALJ considered the same medical evidence as the medical experts, and yet the ALJ came to a completely different conclusion." (Reply 3, ECF No. 11.) But although the ALJ is required to consider state agency opinions, "the determination of RFC is an issue reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e), 416.927(e). Plaintiff also insists that the ALJ merely pointed "to spots in the record where [Plaintiff] may have been having a better day" and again emphasizes that the state agency physicians reviewed those same records and came to a different conclusion. (*Id.*) Plaintiff effectively accuses the ALJ of cherry picking; however, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). Moreover, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406. The undersigned concludes that

substantial evidence supports the ALJ's conclusion.  Thus, the ALJ did not err in rejecting the

state agency opinion that Plaintiff should be limited to sedentary work because he needs a cane.

As such, the undersigned finds no error in the ALJ's weighing of the state agency opinions and

concludes that substantial evidence supports her decision.  It is therefore **RECOMMENDED**

that Plaintiff's third contention of error be **OVERRULED**.

## V.    CONCLUSION

In sum, from a review of the record as a whole, the undersigned concludes that

substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner of Social Security's decision.

## VI.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he

may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE