# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LARRY T. KRIEGER,**

        Plaintiff,    :    Case No. 2:18-cv-876

  - vs -                     Judge Sarah D. Morrison
                              Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

                          :

        Defendant.

## OPINION AND ORDER

Larry Krieger ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits. This matter is before the Court on the Plaintiff's Objection (ECF No. 13) to the Report and Recommendation (R&R) issued by the United States Magistrate Judge on March 13, 2019 (ECF No. 12), recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Plaintiff protectively filed an application for Title II Social Security Disability Benefits on September 24, 2014. (Admin. Record, 355–61, ECF No. 6) Plaintiff's claims were denied initially on February 2, 2015, and upon reconsideration on May 15, 2015. (*Id.* at 218–48). He

1

filed a Request for Hearing on June 2, 2015. (*Id.* at 268–69).

Administrative Law Judge Jeanine Lesperance ("ALJ") held an administrative hearing on April 18, 2017. (*Id.* at 103). On August 2, 2017, the ALJ issued an unfavorable decision. (*Id.* at 79–98). Plaintiff requested review of the administrative decision to the Appeals Council, which denied his request on June 17, 2018, and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at 2–8; 353–54).

Plaintiff filed this case on August 15, 2018 (ECF No. 1), and the Commissioner filed the administrative record on October 29, 2018 (ECF No. 6). Plaintiff filed a Statement of Specific Errors (ECF No. 7), the Commissioner responded (ECF No. 10), and Plaintiff filed a Reply (ECF No. 11). On March 13, 2019, the Magistrate Judge issued her Report and Recommendation. (ECF No. 12). After a thorough analysis, the Magistrate Judge recommended affirming the Commissioner's non-disability finding. On March 27, 2019, Plaintiff timely filed an Objection to the Magistrate's R&R. (ECF No. 13).

## B. Relevant Record Evidence[1]

### 1. Hearing Testimony

Plaintiff, represented by counsel, appeared and testified at the administrative hearing. He testified that he had not worked since 2010, and that he was unable to return to work because of a constant dull ache in his knee. *(Id.* at 114, 121–22). Plaintiff stated that he had a "partial knee joint put in" in October 2014. (*Id.* at 121). Several months later, a doctor "went in and scrapped" his ankle and he began getting injections in his left hip. *(Id.*). Thereafter, he was able to sit for

---

[1] The parties stipulated at the administrative hearing that the relevant period of time for consideration of evidence was from February 16, 2013 (date after prior ALJ denial) through December 31, 2015 (date of last insured). (R. at 93, 105).

three to four hours at a time with his left leg elevated and could lift about 25 pounds. (*Id.* at 123). Plaintiff testified that he could walk around for approximately 45 minutes before he needed to sit again. (*Id.*). Plaintiff recalled getting a cane in 2011 when a doctor mentioned to him "you know, maybe you need to go get a cane." (*Id.* at 124). However, Plaintiff acknowledged that he was never given a prescription for a cane. (*Id.*). Plaintiff also testified that there were about six months after his ankle surgery where he did not use a cane. (*Id.*). Plaintiff testified that he drives about eight times a week and can take trips without stopping for at least 45 minutes. (*Id.* at 112–13). Plaintiff also testified that he was able to help feed and water his rat terriers, vacuum the floors, and load and unload the dishwasher for short periods of time with adequate rest between each activity. (*Id.* at 133–137).

Vocational Expert Eric Walter Pruitt ("VE") also testified. The VE classified Plaintiff's past relevant work experience as electronics solderer (semiskilled, light work), production solderer (unskilled, light work), forklift operator (semiskilled, medium work), and plastic injection mold setter (skilled, medium work). (*Id.* at 144–46). The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[2] to the VE, which limited Plaintiff to a range of work between sedentary and light. (*Id.* at 147). The VE testified that, assuming the limitations of the ALJ's hypothetical, Plaintiff could return to either of his previous soldering jobs. (*Id.* at 148). When asked to alter the hypothetical, the VE testified that there were a limited number of other light, unskilled occupations that Plaintiff would be capable of performing, including facility rental clerk, garment tacking machine tender, and label coder. (*Id.* at 148–49). The VE also testified that were a number of sedentary, unskilled occupations that Plaintiff could

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

perform, including film touchup inspector, document preparer, and circuit board touchup screener. (*Id.* at 149–50).

### 2. Medical Opinions

On September 3, 2014, Dr. Jason Hurst, M.D., a physician at Joint Implant Surgeons, Inc., saw Plaintiff for a left knee follow-up assessment due to complaints of a two-year history of pain and sliding occurring intermittently. (*Id.* at 454). Dr. Hurst noted that Plaintiff used a knee brace given by the Veterans Association ("VA"). (*Id.*). Dr. Hurst observed that Plaintiff could ascend and descend stairs with the assistance of the handrail and that he "requires the use of a cane to ambulate." (*Id.*). Dr. Hurst noted Plaintiff's primary diagnosis as osteoarthritis and pain of the left knee and recommended a conservative approach, including knee injections and no physical therapy. (*Id.*).

Dr. Hurst saw Plaintiff again the next day for a left hip follow-up assessment due to Plaintiff's complaint of left hip pain, particularly while walking. (*Id.* at 452). Dr. Hurst observed that Plaintiff could ascend and descend the stairs in a non-reciprocal fashion, was only able to walk indoors, exhibited a moderate limp, and could sit in any chair comfortably for one hour. *(Id.*). Plaintiff relayed to Dr. Hurst that he used one cane for walking "most of the time." (*Id.*). Dr. Hurst noted Plaintiff's primary diagnosis as osteoarthritis of the left hip and recommended a conservative approach, including deferring hip injections and no surgery. (*Id.* at 453). Dr. Hurst concluded, "I don't believe Mr. Krieger should be disabled due to either his hip or knee complaints." (*Id.*).

On January 30, 2015, Dr. Steve McKee, M.D., a state agency physician, reviewed Plaintiff's medical records as part of a physical RFC assessment. Dr. McKee opined that Plaintiff could occasionally lift or carry 10 pounds and frequently lift or carry less than 10 pounds. (*Id.* at

4

228). Dr. McKee opined that Plaintiff could stand or walk for a total of two hours but "[a] medically required hand-held assistive device is necessary for ambulation." (*Id.*). Dr. McKee opined that Plaintiff could sit with normal breaks for six hours out of an eight-hour workday and that he had limited ability to operate push or pull controls with his left foot. (*Id.* at 229). Dr. McKee also opined that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch but could never climb ropes, ladders, or scaffolds, or crawl. (*Id.*). Dr. McKee based his findings upon his review of Plaintiff's September 2, 2014 exam by Dr. Hurst, where it was noted that Plaintiff required a cane for ambulation, and his July 1, 2014 exam at the VA where Plaintiff was prescribed a basic hinge knee brace but was noted to ambulate well. (*Id.*). On May 14, 2015, Dr. Elaine Lewis, M.D., also a state agency reviewing physician, adopted Dr. McKee's opinions. (*Id.* at 245).

On July 28, 2016, Dr. Robert Hess, M.D., performed an independent medical evaluation of Plaintiff at the request of Plaintiff's counsel. (*Id.* at 845–89). Plaintiff relayed to Dr. Hess that he had a partial knee replacement between 2013 and 2014. (*Id.* at 847). In addition, Dr. Hess noted that Plaintiff had arthroscopy of the left knee on three occasions, arthroscopic surgery and debridement of the left ankle, and hip injections for pain and arthritic and bursitis changes in his left hip. (*Id.*). Dr. Hess also noted that Plaintiff stopped working in August 2010 because of "ongoing, unrelenting, constant leg pain, specifically in the knee, hip, back, and ankle." (*Id.*). Upon his own examination, Dr. Hess observed that Plaintiff had "severe left antalgic gait and it is necessary for him to have a cane in his right hand to walk. It is a painful gait." (*Id.*). Based on his review of Plaintiff's medical files and his own evaluation, Dr. Hess opined that Plaintiff had 52% whole person impairment. (*Id.* at 849).

5

### C. The ALJ's Decision

The Magistrate Judge accurately described the ALJ's decision. (*See* R&R, 5–7, ECF No. 12). At step four of the sequential process,[3] the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and occasionally kneel, crouch, and crawl. The claimant could not operate any foot controls with he left lower extremity.

(R. at 87).

In making such finding, the ALJ noted that while the claimant stated that he typically ambulated with a cane,

> there is little evidence to support that the claimant required a use of a cane during this time, as he even admitted that there is no prescription for it and the doctor just "recommended" in 2011 that he use one . . . . The record does include intermittent references to the claimant using a cane but nothing on a consistent basis and nothing to explain the circumstances in which he used it. . . . Therefore, the claimant did not meet his burden to establish it is medically necessary.

(*Id.* at 90). The ALJ ultimately concluded that Plaintiff was not under disability any time from the alleged onset date through December 31, 2015. (R. at 93).

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the

---

[3] *See* R&R, fn. 1, ECF No. 12.

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## III.　ANALYSIS

In his Statement of Specific Errors, Plaintiff asserts three assignments of error, one of which also forms the basis of his Objection to the Magistrate Judge's R&R. Specifically, Plaintiff contends that the ALJ and the Magistrate Judge failed to properly consider the evidence in concluding that no assistive device was medically necessary when constructing Plaintiff's RFC. (Objection, 2, ECF No. 13).

Plaintiff argues that the ALJ "circumvented the evidence in the record and the uncontradicted statements by the medical providers" in reaching her conclusion that Plaintiff's use of an assistive device was not a medical necessity. (*Id.*). Specifically, Plaintiff contends that Dr. Hurst, Dr. Hess, and the state agency's reviewing physicians agreed that Plaintiff needed to use an assistive device, and that there were numerous references in the record to support the necessity, including Plaintiff's multiple surgeries and significant problems with his gait. (*Id.*).

Social Security Regulation 96-9p specifically requires:

> medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

1996 WL 374185, at *7 (July 2, 1996). If a cane is not medically necessary, it is not considered a restriction on the ability to work and the ALJ is not required to reduce the claimant's RFC

7

accordingly. *Carreon v. Massanari*, 51 Fed. Appx. 571, 575 (6th Cir. 2002). Medical necessity requires more than just the claimant's subjective desire to use the cane. *Penn v. Astrue,* No. 2:09-CV-169, 2010 WL 547491, at *6 (S.D. Ohio Feb. 12, 2010).

In her Report and Recommendation, the Magistrate Judge cites the reasons supporting the ALJ's conclusion that there is little evidence in the record to support Plaintiff's need to use a cane as articulated under SSR 96-9p. After carefully reviewing the record *de novo*, this Court finds the Magistrate Judge's assessment of the evidence accurate.

According to Plaintiff, he recalled getting a cane in 2011 when a doctor mentioned to him "you know, maybe you need to go get a cane." (*Id.* at 90, 124). However, Plaintiff acknowledged that he was never given a prescription for a cane. (*Id.*). Plaintiff also provided that he did not use a cane for about six months after his ankle surgery in March 2015. (*Id.* at 90, 124). While Dr. Hurst observed that Plaintiff required a cane to ambulate, Dr. Hurst never made any determination regarding whether a cane was medically necessary or described the specific circumstances for which it was needed. (*Id.* at 91, 452–54). Plaintiff only relayed to Dr. Hurst that he used the cane "most of the time" for walking. (*Id.* at 454). Further, the state reviewing physicians' opinions that Plaintiff's use of a cane was medically necessary were based solely on Dr. Hurst's observation that Plaintiff used a cane. (*Id.* at 228–29). The state reviewing agency physicians also noted that Plaintiff ambulated well based on his evaluation two months earlier at the VA. (*Id.* at 229). Additionally, the ALJ properly noted that Dr. Hess' first-hand observations regarding Plaintiff's use of a cane fell several months after the date of last insured. (*Id.* at 91, 847). He also failed to note any of the specific circumstances requiring Plaintiff's use of the cane as required by SSR 96-9p. (*Id.*).

While Plaintiff demonstrated that he has used a cane—albeit inconsistently—he did not

8

point to any clinical evidence that unmistakably supported that he *must* use a cane. *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-CV-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013). As the Magistrate Judge concluded, "Plaintiff fails to point to any medical documentation establishing that a cane is medically necessary or describing the circumstances for which it is needed, as the SSR 96-p requires." (R&R, 11); *see White v. Berryhill*, No. 3:16-CV-457, 2018 WL 1516782, at *6 (S.D. Ohio Mar. 28, 2018) (holding that a prescription for a cane did not equate with a medical necessity when the prescription did not include why the claimant needed the cane or when to use it); *Mitchell v. Comm'r of Soc. Sec.*, No. 13CV1969, 2014 WL 3738270, at *12 (N.D. Ohio July 29, 2014) (finding that the claimant's own testimony and treatment notes by his physician that he used a cane did not qualify as medical documentation establishing the need for a cane under SSR 96-9p). Moreover, "[w]here there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (quoting *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-CV-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Case*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Accordingly, the Court finds, as did the Magistrate Judge, that the ALJ properly considered the evidence and concluded that no assistive device was medically necessary. The Court concludes that substantial evidence supports the ALJ's decision denying benefits, and the Court **OVERRULES** Plaintiff's Objection.

9

## IV. CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 13), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 12), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE